IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : : : : : : |
| | : CRIMINAL ACTION NO. |
| | : 1:04-CR-107-RWS |
| v. | : : : : |
| RENATO NUNEZ DE CACERES DE LA GARZA | : : |

### ORDER

Now before the Court is Defendant's Motion for Out-of-Time Appeal [65-1] which was recharacterized by Order of the Court as a Motion for Habeas Corpus Relief pursuant to 28 U.S.C. § 2255 [66]. After considering the entire record, the Court enters the following Order.

### Background

On February 24, 2004, the grand jury returned an indictment charging Defendant with (1) conspiracy to possess with intent to distribute

AO 72A
(Rev.8/82)

methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii), 846, and (2), intentionally possessing with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). Following a number of meetings between Defendant, his attorney, Mr. Dwight Thomas, and Mr. Thomas's staff, Defendant entered into a written, negotiated guilty plea agreement. Under the terms of that agreement relevant to these proceedings, Defendant agreed to plead guilty to Count 2 of the indictment and to waive any right to appeal or collaterally attack his sentence.[1] In return, the Government agreed to dismiss the charges as to Count 1.

On September 20, 2004, Defendant entered his guilty plea with this Court. During the guilty plea proceedings, Defendant's sentence-appeal waiver was discussed on two occasions: first, by the Government in describing the terms of the negotiated plea agreement, and second, by the Court during the Rule 11 colloquy. After finding that the plea was "voluntarily made with full knowledge of the charge and the consequences of his plea," the Court accepted

---

[1] Defendant's waiver was made subject to two exceptions. It is undisputed, however, that Defendant's claims do not fall within the exceptions to the express waiver provision. Specifically, the Court did not upwardly depart and the Government did not file an appeal as to the sentence imposed. Therefore, the Court will simply discuss the effect of the waiver, without reference to any exceptions or qualifications.

2

Defendant's guilty plea. On November 23, 2004, Defendant was sentenced to a term of 135 months imprisonment.

Defendant now contends in his recharacterized Motion that he was denied effective assistance of counsel because his attorney "failed to file the requisite notice of appeal on behalf of Defendant despite having been notified by Defendant of his desire to appeal[.]" (Def.'s Mot. for Out-of-Time Appeal [65] at 1.) On October 11, 2005, the Court held an evidentiary hearing, at which both Defendant and his attorney, Mr. Thomas, testified, to determine whether Defendant should be permitted to file an out-of-time appeal.

## Discussion

### I. Waiver of Appeal Rights

Defendant negotiated an agreement with the Government regarding the disposition of his criminal charges. These negotiations resulted in Defendant's entry of a guilty plea which was accepted by this Court. A guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim . . . , but a grave and solemn act, which is accepted only with care and discernment." United States v. Hyde, 520 U.S. 670, 677, 117 S. Ct. 1630, 137 L. Ed. 2d 935 (1997) (citations and internal quotations omitted). A

3

guilty plea waives all but jurisdictional claims up to the time of the plea, see Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."), and forecloses most claims from collateral attack. See United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). This waiver includes constitutional claims. See, e.g., Wilson, 962 F.2d at 997 (pre-plea ineffective assistance claims waived); Dermota v. United States, 895 F.2d 1324, 1326 (11th Cir. 1990) (double jeopardy claim waived).

"A plea agreement is, in essence, a contract between the Government and a criminal defendant. Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal. . . ." United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999). It is well-settled that a sentence-appeal waiver, if made knowingly and voluntarily, is valid and enforceable. United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993). A valid sentence-appeal waiver precludes a criminal defendant from attempting to attack

4

the sentence in a collateral proceeding through a claim of ineffective assistance of counsel during sentencing. <u>Williams v. United States</u>, 396 F.3d 1340, 1342 (11th Cir. 2005). In order for a sentence-appeal waiver to be considered knowing and voluntary, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." <u>Id.</u> at 1351.

A review of the plea agreement signed by Defendant, as well as Defendant's own statements made during the guilty plea proceedings, establishes that Defendant knowingly and voluntarily waived his right to appeal or collaterally attack his sentence. The plea agreement signed by Defendant contains clear and unambiguous provisions by which Defendant waived his right to challenge his sentence on appeal or collateral attack. Specifically, the plea agreement provides:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure

5

>from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of his sentence.

Although the contents of a written plea agreement alone are insufficient to establish that a sentence-appeal waiver was made knowingly and voluntarily, see Bushert, 997 F.3d at 1352, the contents of the plea agreement are not irrelevant. For example, in United States v. Jones, the Eleventh Circuit stated:

> [W]e have consistently considered written plea agreements to be part of the record of the Rule 11 hearing. See United States v. Hourihan, 936 F.2d 508, (11th Cir. 1991); United States v. Bell, 776 F.2d 965, 969 (11th Cir. 1985), cert. denied, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). See also United States v. Padilla, 23 F.3d 1220, 1221-22 (7th Cir. 1994) (looking to written plea agreement to determine if defendant knew of mandatory minimum sentence). We hold that where a signed, written plea agreement describing a mandatory minimum sentence is specifically referred to during a Rule 11 plea colloquy, the core principle that the defendant be aware of the consequences of his plea has been complied with.

143 F.3d 1417, 1420 (11th Cir. 1998).

In this case, the Court twice discussed the contents of the written plea agreement, including its sentence-appeal waiver, with Defendant. This discussion of the contents of the plea agreement, and especially the sentence-

appeal waiver, combined with the clear and unambiguous language of the written plea agreement signed by Defendant after receiving the assistance of counsel, satisfies the core principle that Defendant was aware of the consequences of his plea. But, the Court need not rely on the written agreement to conclude that Defendant knowingly and voluntarily waived his right to challenge his sentence; Defendant's own words in response to the Court's questions make the knowledge and voluntariness of the waiver absolutely clear.

The transcript of the guilty plea proceedings demonstrates that the Court thoroughly addressed the consequences of the sentence-appeal waiver with Defendant on two occasions. Initially, the Court addressed the sentence-appeal waiver with Defendant after the Government discussed the terms of the plea agreement. The transcript reflects the following discussion:

> THE COURT: Mr. McClernan, if you would, review the terms of the plea agreement.
>
> MR. MCCLERNAN: Thank you, Your Honor. The terms of the plea agreement are as follows: . . .
>
> [T]he defendant acknowledges a number of rights that the Court has just gone over with him that he is giving up by pleading guilty. . . .

7

> > The defendant has given his limited waiver of appeal, that is, he is waiving his right to appeal except in two circumstances, one being if the government should file an appeal and the other is that if this Court should decide to upwardly depart from his guideline range, he could then appeal that upward departure.
> >
> > Also, Your Honor, the defendant has given a waiver as to Blakely [v.] Washington, waiving whatever impact that decision and its progenies, including the case before the United States Supreme Court, might have on his case. . . .
>
> THE COURT:   Mr. Nunez, is that your understanding of the agreement you have reached with the government?
>
> THE DEFENDANT:   Yes, Your Honor.

(Tr. of Guilty Plea Proceedings [71] at 7-10.)  Later, the Court specifically questioned Defendant regarding both the general sentence-appeal waiver and his waiver of appeal rights under Blakely during the Rule 11 colloquy.  In pertinent part, the transcript reads as follows:

> THE COURT:   Okay.  In the plea agreement you entered into, Mr. Nunez, the possible penalties are set out.
>
> Do you understand that this crime carries a

8

|                 | maximum term of imprisonment of life in prison and carries a mandatory minimum term of imprisonment of ten years, a term of supervised release of at least five years, a fine of up to four million dollars and a mandatory special assessment of $100? |

THE DEFENDANT:   Yes, I understand, Your Honor.

THE COURT:   Do you understand that the Court will be applying the Federal Sentencing Guidelines, and under those guidelines, I have the authority after calculating the guidelines, to impose a sentence that is more severe or less severe than the guidelines call for?

THE DEFENDANT:   Yes, Your Honor, I understand.

THE COURT:   Do you also understand that under some circumstances, you or the government may have the right to appeal the sentence that I impose?

THE DEFENDANT:   Yes, Your Honor.

THE COURT:   Mr. Nunez, do you understand that an appeal is the only opportunity that you have to have other judges review my decision about your sentence to determine if it is correct?

THE DEFENDANT:   Yes, Your Honor.

9

| | |
|---|---|
| THE COURT: | Do you understand that in your plea agreement, you have given up that right to have an appeal except in the two circumstances that were mentioned, that is, if I were to upwardly depart on your sentence or if the government files an appeal? |
| THE DEFENDANT: | Yes, I understand, Your Honor. |
| THE COURT: | You also in your plea agreement have waived Blakely issues. Do you understand that under a case called Blakely [v.] Washington, there is some question about whether the government would have to allege matters that enhance your sentence and prove those beyond a reasonable doubt but that you're waiving those issues and permitting me to make decisions about those, about your sentence, and allowing the government to prove those matters by a preponderance of the evidence? |
| THE DEFENDANT: | Yes, I understand, Your Honor. |
| THE COURT: | Have you had an opportunity to talk with Mr. Thomas about all of these matters that are contained within your plea agreement? |
| THE DEFENDANT: | Can you repeat that, please? |
| THE COURT: | Yes. Have you had an opportunity to talk with Mr. Thomas about the matters in your plea agreement and today with Mr. Gardner about a couple of changes? Between the |

|  |  |
|---|---|
|  | two of them, have you discussed all of these matters in your agreement with your attorney? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | And do you feel that you understand all of those matters? |
| THE DEFENDANT: | Yes, Your Honor. |

. . .

| | |
|---|---|
| THE COURT: | Is there anything that we have talked about that you did not understand? |
| THE DEFENDANT: | Everything is perfectly clear, Your Honor. |
| THE COURT: | Do you have any questions about your case or the entry of this plea before I accept your plea? |
| THE DEFENDANT: | None, Your Honor. |
| THE COURT: | Do you feel that you have had a sufficient opportunity to talk with your attorneys before making a decision to plead guilty? |
| THE DEFENDANT: | Yes, Your Honor. |

(Tr. at 14-17.)

This record demonstrates that Defendant's sentence-appeal waiver was knowingly and voluntarily given. The Court thoroughly questioned Defendant

11

regarding the sentence-appeal waiver, and Defendant clearly, unambiguously, and repeatedly stated that he understood its terms and consequences. As such, Defendant's sentence-appeal waiver is valid and enforceable.

Although Defendant now contends that he believed he was waiving only his appeal rights under Blakely, that his responses during the guilty plea proceedings related only to that Blakely waiver, and that he only indicated his assent to the terms of the plea agreement because he placed his trust in his counsel, this position is belied by the record and Defendant's own words. Notably, as set forth above, the Court specifically and separately addressed both the general sentence-appeal waiver and Defendant's waiver of his right to appeal on Blakely grounds. In response to each of these separate lines of questioning by the Court, Defendant clearly stated that he agreed to the terms of the waiver and understood their consequences. Given Defendant's responses to the thorough and probing inquiry of the Court, neither Defendant's express displeasure with the length of his sentence, nor his professed blind trust in his attorney, are sufficient to render his waiver unenforceable.

Based on Defendant's responses to the Court's questions regarding his sentence-appeal waiver, the Court finds that Defendant knowingly and

12

voluntarily waived his right to appeal or collaterally attack his sentence. That waiver is valid and enforceable. Bushert, 997 F.2d at 1350-51. Under Williams, Defendant is precluded from attempting to attack the sentence in a collateral proceeding through a claim of ineffective assistance of counsel during sentencing. 396 F.3d at 1342. To hold otherwise would "permit [the] defendant to circumvent the terms of [his] sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Id.

## II. Defendant's Request to File an Appeal

Even if the sentence-appeal waiver were invalid, the Court would decline to grant Defendant relief. On October 11, 2005, the Court held an evidentiary hearing to determine whether Defendant in fact requested that his attorney file a notice of appeal. During that hearing, the Court heard testimony from both Defendant and his attorney, Mr. Thomas. Defendant testified that he requested that Mr. Thomas file a notice of appeal; Mr. Thomas adamantly denied that Defendant ever made such a request. The Court has had an opportunity to hear the testimony of the witnesses and observe their demeanor. Cognizant of the rule that an interested attorney accused of providing ineffective assistance is not

13

to be presumed more credible than an interested defendant, see Gallego v. United States, 174 F.3d 1196, 1198 (11th Cir. 1999), the Court finds Defendant's testimony unworthy of credence and concludes that Defendant did not request that Mr. Thomas file a notice of appeal.

For clarity, the Court addresses one final issue. Defendant's counsel in the § 2255 evidentiary hearing asserts that Defendant is entitled to relief under the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470 (2000). But, Flores-Ortega supports the Court's conclusion here. In that case, the Supreme Court stated:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning--advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under

14

> what circumstances does counsel have an obligation to consult with the defendant about an appeal?
>
> . . .
>
> We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in <u>Strickland</u> and common sense. For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

<u>Id.</u> at 478-80 (citations omitted). The Supreme Court went on to "hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for

15

appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

In this case, Defendant's counsel, Mr. Thomas, had no constitutionally imposed duty to consult with Defendant about an appeal. In light of the clear and unambiguous sentence-appeal waiver, the thorough questioning by the Court, and Defendant's unqualified acknowledgment of, and assent to, the terms of the sentence-appeal waiver during the Rule 11 colloquy, there was no reason to think either that Defendant would want to appeal or that there were viable grounds for such an appeal. Furthermore, in view of the Court's finding that Defendant did not, in fact, indicate to Mr. Thomas that he wished for him to file an appeal, the second prong of Flores-Ortega is irrelevant. Therefore, nothing in Flores-Ortega precludes the Court from prohibiting Defendant from challenging his sentence on ineffective assistance of counsel grounds.

## Conclusion

Defendant's Motion for Out-of-Time Appeal, which was recharacterized as a Motion for Habeas Corpus Relief pursuant to 28 U.S.C. § 2255 by Order of the Court, is hereby **DENIED**.

**SO ORDERED** this   28th   day of October, 2005.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE
